UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROSE ANWAR,

           Plaintiff,           Case No. 15-cv-12708

v           Honorable Thomas L. Ludington

THE DOW CHEMICAL COMPANY,
a foreign corporation, et al.,

           Defendants.

_____/

**ORDER DISMISSING DEFENDANT RAMACHANDRAN FOR LACK OF PERSONAL JURISDICTION, DIRECTING THE PARTIES TO CONDUCT LIMITED JURISDICTIONAL DISCOVERY, DIRECTING SUPPLEMENTAL BRIEFING, AND PROVIDING THE PARTIES NOTICE THAT DEFENDANT DOW'S MOTION TO DISMISS WILL BE CONVERTED INTO A MOTION FOR SUMMARY JUDGMENT**

Plaintiff Rose Anwar initiated the present suit in this Court on August 3, 2015 against Defendant The Dow Chemical Company ("Dow"), Defendant MEGlobal International ("MEG International") and Defendant Ramesh Ramachandran ("Ramachandran"), alleging that MEG International and Ramachandran impermissibly terminated her employment because of her gender, religion, national origin, and marital status. Compl. ECF No. 1. Anwar raises six claims in her complaint: (1) Sex discrimination in violation of Title VII; (2) Sex discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"); (3) Marital status discrimination in violation of ELCRA; (4) Breach of an express written agreement; (5) Breach of an implied contract; and (6) Promissory Estoppel. *Id*.

On September 21, 2015, Defendants MEG International and Ramachandran filed a motion to dismiss, arguing that this Court lacked personal jurisdiction over them, that they had not been properly served, and that the Court should dismiss Anwar's claims on grounds of *forum*

*non conveniens*. ECF No. 16. That same day Defendant Dow filed a motion to dismiss, arguing that Anwar had failed to state a claim against it and, alternatively, that Anwar's claims should be dismissed on grounds of *forum non conveniens*. For the reasons stated below the claims against Defendant Ramachandran will be dismissed for lack of personal jurisdiction. The remaining parties will then be directed to conduct limited discovery regarding the alleged interrelatedness of the MEGlobal subsidiaries and the identity of the MEG International managers' employer.

**I.**

**A.**

Defendant Dow is a foreign profit corporation with its principal place of business in Midland, Michigan. Compl. ¶ 2.

Defendant MEG International is a legal entity established under and registered with the Dubai Airport Freeport regulations in Dubai, United Arab Emirates. Mot. to Dismiss I Ex. A ¶ 5. In her complaint, Anwar alleges that Defendant MEG International is a joint venture between Defendant Dow and Petrochemical Industries Company. Compl. ¶¶ 3-4. However this allegation is contradicted by the declaration of Dr. Linda Freisler, chief legal counsel and Board of Directors member for MEG International. Mot. to Dismiss I Ex. A, Friesler Dec. Dr. Friesler declares that MEG International is a wholly owned subsidiary of MEGlobal Europe GMBH, a Swiss entity, which is in turn a wholly owned subsidiary of MEGlobal BV, a Dutch legal entity located in the Netherlands that has seven other wholly owned subsidiaries. *Id*. at ¶ 6. Dr. Friesler further declares that MEGlobal BV is a joint venture that is 50% owned by Petrochemical Industries Company, a Kuwaiti legal entity, and 50% owned by Dow Europe Holdings, B.V., a company organized and registered under Dutch law. *Id*. at ¶ 7.

Defendant Ramesh Ramachandran is the acting Chief Executive Officer and president of MEG, and was Anwar's supervisor at MEG. *Id*. at ¶ 6. Anwar alleges that Ramachandran was also employed by Dow, and that Dow controlled MEG through Ramachandran and other managers, as well as "an interrelation of operations, common management and control of management, centralized control of human resources and labor relations, and a common ownership of financial control of Defendant ME Global, Plaintiff's direct employer." *Id*. at ¶¶ 8-11. Mr. Jared Bierlein, a human resources manager at Defendant Dow, states in his declaration that Defendant Ramachandran is not in fact an employee of Defendant Dow, but is employed by DCOMCO, Inc., a subsidiary of Defendant Dow. *See* Mot. to Dismiss I Ex. D, Bierlein Dec. Bierlin's declaration does not explain DCOMCO's legal or business relationship to Dow or to MEG International.

**B.**

Plaintiff Rose Anwar, a United States citizen residing in Dubai, began working as an Information Technology ("IT") manager with Defendant MEG International in Dubai on or around November, 2007. *Id*. at ¶ 28. In June 2011, Anwar was promoted to Global IT and Services Leader and Communications Manager. *Id*. at ¶ 30. Anwar alleges that, following this promotion, Defendant Ramachandran repeatedly harassed Anwar in an attempt to make her feel guilty for leaving her young twins at home while she worked. *Id.* at ¶ 30. Specifically Anwar alleges that Ramachandran, a Hindu of Indian descent, indicated that Indian females such as Anwar, a Muslim of Indian descent, should not leave children at home in order to work. *Id*. at ¶¶ 32-33.

Anwar alleges that she received warnings from other Board members that Ramachandran was "attempting to get rid of her" and that he believed MEG International did not need "highly

paid female employees." *Id*. at ¶¶ 35-39. Anwar further alleges that Ramachandran had terminated highly paid female employees in the past and had replaced them with former contacts from India. *Id*. at ¶¶ 40-41.

Anwar claims that she was fired after initiating divorce proceedings against her former husband. According to Anwar, Ramachandran met with Anwar's former husband prior to the divorce to discuss the divorce and Anwar's personal and marital problems. *Id.* at ¶¶ 43-44. On June 8, 2014 Anwar attended a divorce proceeding in Dubai, in which she requested a divorce and her husband verbally threatened to destroy her. *Id*. at ¶¶ 47-48. The next day, Ramachandran terminated Anwar's employment, claiming that she had breached the company business code of conduct. *Id*. at ¶ 49.

Following her termination Anwar brought an action against MEG in Dubai's courts, alleging the following: (1) MEG International failed to provide her notice of termination in violation of the law; (2) MEG International terminated her employment for an arbitrary reason; and (3) MEG International failed to provide severance pay in violation of the law. *See* Pl.'s Resp. to Mot. to Dismiss II 3, ECF No. 25. Anwar does not dispute Defendants' claim that the Dubai court awarded Anwar severance compensation after finding that MEG International did not provide Anwar with sufficient notice of termination. *Id.* at 7. Anwar claims, however, that Dubai's courts provide an insufficient remedy because they can only provide up to two years of back pay and there are no civil protections against sexual or marital status discrimination. *Id*. at 3-4. Anwar accordingly filed the present action, which Defendants now move to dismiss.

## II.

In their motions to dismiss, Defendants have raised numerous jurisdictional issues, including personal jurisdiction, service of process, and *forum non conveniens*. While the

Supreme Court's decision in *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998) "clarified that a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit" the Court explained in *Ruhrgas AG v. Marathon Oil Co*. 526 U.S. 574 (1999) that there is no mandatory sequencing of jurisdictional issues. *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp*. 549 U.S. 422, 431 (2007). "A district court therefore may dispose of an action by a *forum non conveniens dismissal*, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Id*. at 432. Defendant Ramachandran's claims that this Court lacks personal jurisdiction over him will be addressed first. The court will then direct the parties to conduct discovery on two narrow jurisdictional issues.

**III.**

Defendant MEG and Defendant Ramachandran argue that Anwar's claims against them should be dismissed because this Court does not have personal jurisdiction over them. A plaintiff bears the burden of establishing personal jurisdiction. *See Brunner v. Hampson*, 441 F.3d 457, 462 (6th Cir. 2006). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleading but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012) (quoting *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991)).

"Presented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen*, 935 F.2d at 1458. When a district court does not

conduct an evidentiary hearing, but instead rules solely on written submissions, the plaintiff's burden is relatively slight: the plaintiff "must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal." *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 367, 360 (6th Cir. 2008) (quoting *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991). In such a case, a court "will not consider facts proffered by the defendant that conflict with those offered by the plaintiff, and will construe the facts in a light most favorable to the nonmoving party." *Indah v. U.S. S.E.C.*, 661 F.3d 914, 920 (6th Cir. 2011) (internal quotations and citation omitted). "Because weighing any controverted facts is inappropriate at this stage, dismissal is proper only if [the plaintiff's] alleged facts collectively fail to state a prima facie case for jurisdiction." *Carrier Corp*. 673 F.3d at 449 (internal quotations and citation omitted).

### A.

Defendant Ramachandran also argues that this Court does not have personal jurisdiction over him. In her complaint, Plaintiff Anwar alleges only that Defendant Ramachandran "is an employee of Defendant Dow and is the acting Chief Executive Officer and President of Defendant ME Global." Compl. ¶ 6. Anwar has presented no evidence to establish that this Court has personal jurisdiction over Ramachandran, and she has not rebutted Defendants' arguments that this Court does not have personal jurisdiction over Ramachandran, who lives in Dubai where all of the events alleged by Anwar took place. *See* Mot. for Summ. J. I 12-13. Because Anwar has not carried her burden of establishing personal jurisdiction over Defendant Ramachandran, her claims against him will be dismissed.

### B.

In her response to Defendants' motion, Anwar asserts only a single theory of personal jurisdiction over MEG International: that this Court has general jurisdiction over MEG International under the doctrine of alter-ego personal jurisdiction. In her complaint Anwar alleges that MEG International does business as MEG Americas, which is a foreign profit corporation authorized to conduct business in the State of Michigan and operating in the County of Midland, Michigan. Compl. ¶ 3. The parties do not dispute that MEG Americas is subject to personal jurisdiction in the Eastern District of Michigan.

i.

In the present action, this Court has federal jurisdiction over Anwar's federal claims and supplemental jurisdiction over her state law claims. *See* 28 U.S.C. §§ 1361, 1367. Accordingly, this Court must look both to federal law and Michigan law to supply the law on alter-ego personal jurisdiction.

In *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014), the Supreme Court recognized a theory of alter ego personal jurisdiction in which "a subsidiary's jurisdictional contacts can be imputed to its parent only when the former is so dominated by the latter as to be its alter ego." *Id.* at 759. The Court expressly rejected the Ninth Circuit's holding that the finding of an "agency" relationship between a foreign parent entity and a local subsidiary was sufficient to impute personal jurisdiction to the parent. *Id.*

To satisfy the alter ego test under federal law, "a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Ranza v. Nike,* 793 F.3d 1059, 1073 (9th Cir. 2015).

> The "unity of interest and ownership" prong of this test requires a showing that the parent controls the subsidiary to such a degree as to render the latter the mere

- 7 -

> instrumentality of the former. This test envisions pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation. Total ownership and shared management personnel are alone insufficient to establish the requisite level of control.

*Id*. (internal citations and quotations omitted).

In the Sixth Circuit, "[t]he alter-ego theory provides for personal jurisdiction if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." *Indah*, 661 F.3d at 921. The Sixth Circuit considers the following factors: 1) sharing the same employees and corporate officers; 2) engaging in the same business enterprise; 3) having the same address and phone lines; 4) using the same assets; 5) completing the same jobs; 6) not maintaining separate books, tax returns and financial statements; and 7) exerting control over the daily affairs of another corporation. *Estate of Thompson*, 545 F.3d at 362-63.

Under Michigan law, there is a presumption that, "absent some abuse of the corporate form, parent and subsidiary corporations are separate and distinct entities." *Seasword v. Hilti, Inc.*, 449 Mich. 542, 547 (Mich. 1995). Like under federal law, to rebut this presumption a party must show that a subsidiary is a "mere instrumentality" of the parent. *Id*. As explained by the Michigan Court of Appeals:

> Facts tending to show the existence of an alter ego relationship include if the parent and subsidiary share principal offices, if they share board members or executives, if all of the parent's revenue comes from the subsidiary's sales, if all capital for the subsidiary is provided by the parent, if the subsidiary purchases supplies exclusively from the parent, if the subsidiary is seriously undercapitalized, if the parent regularly provided gratuitous services to the subsidiary, if the parent handled the subsidiary's payroll, if the parent directed the policies and decisions of the subsidiary, and if the parent considered the subsidiary's project to be its own.

*Id.* (*citing Seasword*, 449 Mich. at 548 n. 10, and *Herman v. Mobile Homes Corp.*, 317 Mich. 233, 239–41 (1947)).

### ii.

In her declaration, Dr. Friesler states that MEG Americas is one of the eight subsidiaries of MEGlobal BV. Friesler Dec. ¶ 18. This means that MEG International is neither a parent nor subsidiary of MEG International, but is instead a kind of "nephew" entity of MEG Americas. MEG International argues that a finding of alter-ego jurisdiction is therefore improper because the entities do not have a parent-subsidiary relationship.

"Normally, courts apply the alter-ego theory of personal jurisdiction to parent-subsidiary relationships." *Estate of Thompson*, 545 F.3d at 362. This however is a case outside of the norm, where Anwar alleges that all of the MEGlobal entities act as a single entity.

Dr. Friesler states that MEG International and MEG America "are separate legal entities, maintain separate offices, have separate and distinct operations, finances and management." Friesler Dec. at ¶ 20. Dr. Friesler notes that MEG International has a services agreement with MEG Americas by which MEG Americas supplies controller services to MEG International, and that MEG International resells certain products to MEG Americas for supply to a MEG Americas client in California. *Id.* at ¶ 20; Def.'s Mot. for Summ. J. I Leikhim Decl. Ex. 2. Dr. Friesler further states that no employee of MEG International is also an employee of MEG Americas, and that no director of MEG International is a director of MEG Americas. Friesler concedes that both she and Defendant Ramachandran serve on the board of directors for MEG Americas, but claims that neither are employees of MEG Americas and neither have an office at MEG Americas. Friesler Dec. at ¶ 22.

Plaintiff Anwar contradicts Dr. Friesler's claims by pointing to her own declaration. There, Anwar states that as a former member of the MEGlobal Management Team, she knows that other members of the Management Team worked in several different offices across the MEGlobal subsidiaries, that all subsidiaries have the same board of directors, all subsidiaries share one common website, and that MEGlobal advertises itself as a global company. Pl. Resp. to Mot. for Summ. J. I, Ex. 1, Anwar Dec. ¶¶ 7, 9-12, 15-17. Anwar further states that the MEGlobal subsidiaries do not conduct their own business or financial operations, that the subsidiaries are all directed by a single Management Team, and that the subsidiaries act as a single company. *Id.* at ¶¶ 13-14.

Because there are material factual disputes regarding the ownership, management, and business and financial operations of the MEGlobal subsidiaries, discovery will be opened for 90 days for the limited purpose of obtaining information related to these issues. Defendants will then be directed to submit supplemental briefs addressing the alleged interrelatedness of the MEGlobal subsidiaries within 15 days of the close of discovery.

**IV.**

Defendant Dow has also filed a motion to dismiss. Dow argues that Anwar has failed to state a claim against it under Rule 12(b)(6) because Anwar was not an employee of Dow at the time of alleged acts. In the alternative, Dow argues that Anwar's claims should be dismissed on grounds of *forum non conveniens*.

As explained by the Sixth Circuit, "Title VII applies only to 'employers.'" *Sutherland v. Michigan Dept. of Treasury*, 344 F.3d 603, 611 (6th Cir. 2003) (quoting 42 U.S.C. § 2000e-2). *See also Morris v. Oldham Cnty. Fiscal Ct.,* 201 F.3d 784, 795 (6th Cir.2000) ( "Congress chose to limit Title VII liability to employers only"); *Swallows v. Barnes & Noble Book Stores, Inc.,*

128 F.3d 990, 992 (6th Cir.1997) (holding that the plaintiff must demonstrate that the defendant was an employer within the meaning of the statute to establish liability under the ADA). "The determination of whether a particular entity is an employer of a Title VII plaintiff involves an examination of whether the alleged employer exercises control over the manner and means of the plaintiff's work." *Sutherland*, 344 F.3d at 612.

ELCRA also applies only to employers. M.C.L.A. § 37.2202 ("An *employer* shall not… discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term condition or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." (emphasis added)). *See also Seabrook v. Mich. Nat'l Corp., 206 Mich.App.* 314, 315–16 (Mich.Ct.App.1994) (affirming state trial court's grant of summary judgment to the defendant on an ELCRA claim because the plaintiff failed to show that an employment relationship existed between her and the defendant). Michigan courts use the "economic realities test" to determine whether an employment relationship exists for purposes of ELCRA. *Varlesi v. Wayne State University*, 909 F.Supp. 2d 827, 843-44 (E.D. Mich. 2012). Therefore, in determining whether an employment relationship exists courts must consider the totality of circumstances surrounding the plaintiff's work, including the following non-controlling factors: (1) control of a worker's duties; (2) payment of wages; (3) right to hire, fire, and discipline; and (4) performance of the duties as an integral part of the employer's business toward the accomplishment of a common goal. *Chilingirian v. City of Fraser*, 194 Mich.App. 65, 486 N.W.2d 347, 349 (1992).

In arguing that Defendant Dow should be liable for the actions of Defendant MEG and Defendant Ramachandran, Anwar does not claim that she was directly employed by Dow. Instead, Anwar claims that Defendant Dow controlled her employment through MEG

International managers who were also Dow employees. *See* Compl. ¶¶ 6, 8-12. Anwar thus argues that Dow exercised control over MEG International's employees such that it should be treated as a joint employer. *See Swallows,* 128 F.3d. at 993. Dow disputes this, claiming that Defendant Ramachandran and the other managers were not employees of Dow, but were instead employees of Dow affiliates.

Resolving this dispute is important first because it will determine whether Anwar has stated a claim against Defendant Dow and, consequently, whether the United States District Court in the Eastern District of Michigan is a proper forum for resolving Anwar's claims under the doctrine of *forum non conveniens*. Dow's motion to dismiss will be converted into a motion for summary judgment, and the Court will address the facts relating to Anwar's jurisdiction claim learned in discovery. In order to assist the Court in making these determinations, discovery will be opened for 90 days for the limited purpose of determining the Defendant Dow's relationship with the MEG International managers, including Defendant Ramachandran. The parties will then have 15 days after the close of discovery to file supplemental briefs addressing these issues.

**V.**

Accordingly, it is **ORDERED** that Defendant Ramachandran is **DISMISSED** from this action for lack of personal jurisdiction.

It is further **ORDERED** that discovery is **OPENED** for the limited purposes of **(1)** investigating Anwar's allegations that MEG International does business as MEG Americas and that the MEGlobal subsidiaries act as a single entity and **(2)** Anwar's allegation that Ramachandran and other MEG International managers are employed by Defendant Dow. The parties will have **90 days from the entry of this order** to conduct this limited discovery.

It is further **ORDERED** that the parties are **DIRECTED** to file supplemental briefs addressing these two issues within **105 days from the entry of this order**.

The parties are hereby put on **NOTICE** that Defendant Dow's motion to dismiss, ECF No. 19, will be **CONVERTED** into a motion for summary judgment, to be decided after receiving the parties' supplemental briefs.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: January 26, 2016

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 26, 2016.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager