UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROSE ANWAR,

                    Plaintiff,                         Case No. 15-cv-12708

v                                         Honorable Thomas L. Ludington

THE DOW CHEMICAL COMPANY,
a foreign corporation, et al.,

                    Defendants.

_____/

**ORDER GRANTING DEFENDANT MEGLOBAL INTERNATIONAL'S MOTION TO DISMISS, DISMISSING MEGLOBAL INTERNATIONAL FOR LACK OF PERSONAL JURISDICTION, GRANTING DEFENDANT DOW'S MOTION FOR SUMMARY JUDGMENT, AND DISMISSING PLAINTIFF'S CLAIMS**

Plaintiff Rose Anwar initiated the present suit in this Court on August 3, 2015 against Defendant The Dow Chemical Company ("Dow"), Defendant MEGlobal International ("MEG International") and Defendant Ramesh Ramachandran ("Ramachandran"), alleging that MEG International and Ramachandran impermissibly terminated her employment because of her gender, religion, national origin, and marital status. Compl. ECF No. 1. Anwar raises six claims in her complaint: (1) Sex discrimination in violation of Title VII; (2) Sex discrimination in violation of the Michigan Elliott-Larsen Civil Rights Act ("ELCRA"); (3) Marital status discrimination in violation of ELCRA; (4) Breach of an express written agreement; (5) Breach of an implied contract; and (6) Promissory Estoppel. *Id*.

On September 21, 2015, Defendants MEG International and Ramachandran filed a motion to dismiss, arguing that this Court lacked personal jurisdiction over them, that they had not been properly served, and that the Court should dismiss Anwar's claims on grounds of *forum*

*non conveniens*.  ECF No. 16.  That same day Defendant Dow filed a motion to dismiss, arguing that Anwar had failed to state a claim against it and, alternatively, that Anwar's claims should be dismissed on grounds of *forum non conveniens*.  In response to those motions, the Court dismissed Plaintiff's claims against Defendant Ramachandran for lack of personal jurisdiction.  *See* Order, ECF No. 30.  The Court then directed the remaining parties to conduct limited discovery regarding the alleged interrelatedness of the MEGlobal subsidiaries and the identity of the MEG International managers' employers.

Jurisdictional discovery has now closed, and the parties have submitted supplemental briefs.  For the reasons stated below Defendant MEG International's motion to dismiss will be granted, and MEG International will be dismissed for lack of personal jurisdiction.  Defendant Dow's motion for summary judgment will also be granted, and Anwar's claims dismissed.

**I.**

Defendant Dow is a foreign profit corporation with its principal place of business of Midland, Michigan. Compl. ¶ 2.

Defendant MEG International is a legal entity established under and registered with the Dubai Airport Freeport regulations in Dubai, United Arab Emirates.  Mot. to Dismiss I Ex. A ¶ 5. MEG International is in the business of distributing ethylelne glycol product to customers within Asia, the Middle East, Turkey, India, and Pakistan. Mot. to Dismiss I Ex. A, Friesler Dec. ¶ 8.  In her affidavit, Dr. Linda Freisler, chief legal counsel and Board of Directors member for MEG International, declares that MEG International is a wholly owned subsidiary of MEGlobal Europe GMBH, a Swiss entity, which is in turn a wholly owned subsidiary of MEGlobal BV, a Dutch legal entity located in the Netherlands that has seven other wholly owned subsidiaries. Id. at ¶ 6. One of the seven wholly owned subsidiaries is MEGlobal Americas ("MEG Americas"),

an entity incorporated in Delaware and registered to do business in Michigan. *Id*. at ¶ 18. Dr. Friesler further declares that MEGlobal BV is a joint venture that is 50% owned by Petrochemical Industries Company, a Kuwaiti legal entity, and 50% owned by Dow Europe Holdings, B.V., a company organized and registered under Dutch law. *Id*. at ¶ 7.

Former Defendant Ramesh Ramachandran is the acting Chief Executive Officer and president of MEG International, and was Anwar's supervisor at MEG International. *Id*. at ¶ 6. Ramachandran was also employed by Dow Chemical Overseas Management Company ("DCOMCO"), a subsidiary of Dow. Anwar alleges that DCOMCO is merely a payroll company for Defendant Dow, and that Dow controlled MEG International through Ramachandran and other managers, as well as "an interrelation of operations, common management and control of management, centralized control of human resources and labor relations, and a common ownership of financial control of Defendant ME Global, Plaintiff's direct employer." *Id*. at ¶¶ 8-11.

### A.

Plaintiff Rose Anwar, a United States citizen residing in Dubai, began working as an Information Technology ("IT") manager with Defendant MEG International in Dubai on or around November, 2007. *Id*. at ¶ 28. In June 2011, Anwar was promoted to Global IT and Services Leader and Communications Manager. *Id*. at ¶ 30. Anwar alleges that, following this promotion, Defendant Ramachandran repeatedly harassed Anwar in an attempt to make her feel guilty for leaving her young twins at home while she worked. *Id.* at ¶ 30. Specifically Anwar alleges that Ramachandran, a Hindu of Indian descent, indicated that Indian females such as Anwar, a Muslim of Indian descent, should not leave children at home in order to work. *Id*. at ¶¶ 32-33.

Anwar alleges that she received warnings from other Board members that Ramachandran was "attempting to get rid of her" and that he believed MEG International did not need "highly paid female employees." *Id.* at ¶¶ 35-39. Anwar further alleges that Ramachandran had terminated highly paid female employees in the past and had replaced them with former contacts from India. *Id.* at ¶¶ 40-41.

Anwar claims that she was fired after initiating divorce proceedings against her former husband. According to Anwar, Ramachandran met with Anwar's former husband prior to the divorce to discuss the divorce and Anwar's personal and marital problems. *Id.* at ¶¶ 43-44. On June 8, 2014 Anwar attended a divorce proceeding in Dubai in which she requested a divorce from her husband, and her husband then verbally threatened to destroy her. *Id.* at ¶¶ 47-48. The next day, Ramachandran terminated Anwar's employment, claiming that she had breached the company business code of conduct. *Id.* at ¶ 49.

## B.

Following her termination Anwar brought an action against MEG in Dubai's courts, alleging the following: (1) MEG International failed to provide her notice of termination in violation of the law; (2) MEG International terminated her employment for an arbitrary reason; and (3) MEG International failed to provide severance pay in violation of the law. *See* Pl.'s Resp. to Mot. to Dismiss II 3, ECF No. 25. Anwar does not dispute Defendants' claim that the Dubai court awarded Anwar severance compensation after finding that MEG International did not provide Anwar with sufficient notice of termination. *Id.* at 7. Anwar claims, however, that Dubai's courts provide an insufficient remedy because they can only provide up to two years of back pay and there are no civil protections against sexual or marital status discrimination. *Id.* at 3-4.

- 4 -

Anwar accordingly filed the present action against Ramachandran, Defendant MEG International, and Defendant Dow. Instead of serving MEG International, Plaintiff Anwar served MEG Americas by certified mail at its place of business in Midland, Michigan. *See* ECF No. 10. Plaintiff Anwar argues that service on MEG Americas is proper because the two are the same entity, and MEG International does business as MEG Americas.  MEG International disagrees, arguing that it is a separate entity from its "uncle" entity MEG Americas. MEG International therefore argues that service was improper and that it is not subject to personal jurisdiction in this Court.

## II.

Now before the Court are Defendant MEG International's motion to dismiss and Defendant Dow's motion for summary judgment. *See* ECF Nos. 16, 19. In their motions, Defendants have raised numerous jurisdictional issues, including lack of personal jurisdiction, insufficient service of process, and *forum non conveniens*.  While the Supreme Court's decision in *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83 (1998) "clarified that a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit" the Court explained in *Ruhrgas AG v. Marathon Oil Co*. 526 U.S. 574 (1999) that there is no mandatory sequencing of jurisdictional issues.  *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp*. 549 U.S. 422, 431 (2007).

## A.

Defendant MEG International's motion to dismiss for lack of personal jurisdiction will be addressed first. A plaintiff bears the burden of establishing personal jurisdiction. *See Brunner v. Hampson*, 441 F.3d 457, 462 (6th Cir. 2006).  "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleading but must, by affidavit or otherwise, set

forth specific facts showing that the court has jurisdiction." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012) (quoting *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991)).  "Presented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen*, 935 F.2d at 1458.   In the present case, the Court has already permitted jurisdictional discovery to aide in deciding the factual issues, and has received supplemental briefs from the parties on those issues.

Anwar asserts only a single theory of personal jurisdiction over MEG International: that this Court has general jurisdiction over MEG International under the doctrine of alter-ego personal jurisdiction based on its relationship to MEG Americas.  The parties do not dispute that MEG Americas is subject to personal jurisdiction in the Eastern District of Michigan.  Because this Court has federal jurisdiction over Anwar's federal claims and supplemental jurisdiction over her state law claims. *See* 28 U.S.C. §§ 1361, 1367, this Court must look both to federal law and Michigan law to supply the law on alter-ego personal jurisdiction.

**i.**

To satisfy the alter ego test under federal law, "a plaintiff must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Ranza v. Nike,* 793 F.3d 1059, 1073 (9th Cir. 2015).

> The "unity of interest and ownership" prong of this test requires a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former. This test envisions pervasive control over the subsidiary, such as when a parent corporation dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-

day operation. Total ownership and shared management personnel are alone insufficient to establish the requisite level of control.

*Id*. (internal citations and quotations omitted).

In the Sixth Circuit, "[t]he alter-ego theory provides for personal jurisdiction if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." *Indah*, 661 F.3d at 921. The Sixth Circuit considers the following factors: 1) sharing the same employees and corporate officers; 2) engaging in the same business enterprise; 3) having the same address and phone lines; 4) using the same assets; 5) completing the same jobs; 6) not maintaining separate books, tax returns and financial statements; and 7) exerting control over the daily affairs of another corporation. *Estate of Thompson*, 545 F.3d at 362-63.

In support of her alter-ego theory, Plaintiff emphasizes that MEG International and MEG Americas share board members and have certain managers that have "Global Roles" with the MEGlobal entities. Plaintiff also emphasizes a Dow 2013 statement in which Dow announced that MEG International would act as the strategic center for all related MEGlobal entities and would provide a source of financing to all its affiliated entities. *See* Pl.'s Supp. Br. Ex. 10. Plaintiff also points to a service agreement that Dow entered into with MEG International, by which Dow agreed to provide services to MEG International in addition to the related MEGlobal entities. *See* Pl.'s Supp. Br. Ex. 11. Anwar concludes that the MEGlobal affiliates are not actually distinct entities, but are instead regional offices of a single MEGlobal entity.

Plaintiff has failed to make a showing of alter-ego jurisdiction under federal law. While Plaintiff has demonstrated that MEG International and MEG Americas share common board members, a common website, and engage in a common enterprise of selling ethylene glycol, Anwar has not shown that MEG International "controls the subsidiary to such a degree as to

render the latter the mere instrumentality of the former." *Ranza v. Nike,* 793 F.3d at 1073. In fact, Anwar has not even shown that MEG Americas is a subsidiary of MEG International, and the evidence suggests that MEG International has no ownership interest in MEG Americas. *See Alexander Associates, Inc. v. FCMP, Inc*., 2012 WL 1033464, at *18 (E.D. Mich. Mar. 27, 2012) (holding that allegations that related entities held themselves out as a single enterprise was insufficient to confer alter-ego jurisdiction, especially where the entities in question were not in a parent-subsidiary relationship). The fact that the ultimate umbrella company, Dow, often refers to these entities as a single entity has no bearing on the question of whether MEG International in fact controls its "uncle" entity MEG Americas.

Furthermore, Anwar has not demonstrated that the entities maintain joint books, tax returns or financial statements, or that they use the same assets. Plaintiff has also not demonstrated that the MEGlobal entities share addresses or phone lines. Finally, Anwar has not shown that any MEG International, or any other MEGlobal entity, exercises day-to-day, pervasive control over the business of MEG Americas. Anwar hangs her hat on an argument that, because the entities share common board members and managers, unity of ownership and interest should be presumed. The Supreme Court has rejected such a presumption. *See United States v. Bestfoods*, 524 U.S. 51, 69 (1998) (noting the well established principle of corporate law that directors and officers holding positions with a parent and its subsidiary are presumed to "change hats" to represent the two entities separately, despite common ownership.) (citations omitted). Because Anwar has not demonstrated a unity of interest and ownership between the MEGlobal entities, Anwar has not established personal jurisdiction over MEG International under federal law.

**ii.**

Under Michigan law, there is a presumption that, "absent some abuse of the corporate form, parent and subsidiary corporations are separate and distinct entities." *Seasword v. Hilti, Inc.*, 449 Mich. 542, 547 (Mich. 1995).  Like under federal law, to rebut this presumption a party must show that a subsidiary is a "mere instrumentality" of the parent. *Id*. As explained by the Michigan Court of Appeals:

> Facts tending to show the existence of an alter ego relationship include if the parent and subsidiary share principal offices, if they share board members or executives, if all of the parent's revenue comes from the subsidiary's sales, if all capital for the subsidiary is provided by the parent, if the subsidiary purchases supplies exclusively from the parent, if the subsidiary is seriously undercapitalized, if the parent regularly provided gratuitous services to the subsidiary, if the parent handled the subsidiary's payroll, if the parent directed the policies and decisions of the subsidiary, and if the parent considered the subsidiary's project to be its own.

*Id*. (*citing Seasword*, 449 Mich. at 548 n. 10, and *Herman v. Mobile Homes Corp*., 317 Mich. 233, 239–41 (1947)).

For the reasons stated above, Anwar has not demonstrated any abuse of the corporate form by MEG International and MEG Americas warranting disregard of their separate statuses. First, Anwar has not demonstrated a parent-subsidiary relationship. Despite a full opportunity to conduct jurisdictional discovery, Anwar has presented no evidence that MEG International receives revenue from MEG Americas' sales, that MEG Americas is undercapitalized, or that MEG International, or any other MEGlobal entity, handles MEG Americas' payroll. *See* Leikhim Dec. II, MEG Supp. Br. Ex. C. While MEG Americas purchases some supplies from MEG International, the record shows that MEG Americas buys less than 7% of its supply from MEG International. *Id*.  The evidence also demonstrates that the entities have separate offices and conduct their respective business in their own names.  *Id.*

Because Anwar has not carried her burden of demonstrating alter-ego jurisdiction, Defendant MEG International's motion to dismiss will be granted, and MEG International will be dismissed for lack of personal jurisdiction.

**B.**

In its motion to dismiss, which was converted into a motion for summary judgment in the Court's previous order, Dow argues that Anwar has failed to state a claim against it because Anwar was not an employee of Dow at the time of alleged acts. *See* ECF Nos. 19, 30. In the alternative Dow argues that Anwar's claims should be dismissed on grounds of *forum non conveniens*.

**i.**

As explained by the Sixth Circuit, "Title VII applies only to 'employers.'" *Sutherland v. Michigan Dept. of Treasury*, 344 F.3d 603, 611 (6th Cir. 2003) (quoting 42 U.S.C. § 2000e-2). *See also Morris v. Oldham Cnty. Fiscal Ct.,* 201 F.3d 784, 795 (6th Cir.2000) ( "Congress chose to limit Title VII liability to employers only"); *Swallows v. Barnes & Noble Book Stores, Inc.,* 128 F.3d 990, 992 (6th Cir.1997) (holding that the plaintiff must demonstrate that the defendant was an employer within the meaning of the statute to establish liability under the ADA).  "The determination of whether a particular entity is an employer of a Title VII plaintiff involves an examination of whether the alleged employer exercises control over the manner and means of the plaintiff's work." *Sutherland*, 344 F.3d at 612.

Anwar does not allege that she was directly employed by Dow.  Instead, Anwar claims that Defendant Dow controlled her employment through MEG International managers such that it should be treated as her joint employer.  Specifically Anwar argues that Ramachandran, the President and CEO of MEG International, was also an employee of Defendant Dow through his

employment with DCOMCO, which according to Anwar serves merely as a payroll company for Dow's expatriate employees working overseas.  *See* Pl.'s Supp. Br. 9, ECF No. 50.  Anwar also argues that her direct supervisor Dr. Linda Freisler is an employee of Dow Deutschland, Inc., a wholly owned subsidiary of Dow, in addition to her employment with MEG International.

Anwar has presented no evidence that Dow exercised any control over the employment of Dr. Freisler, who was not an employee of Dow.  It is well-settled that, in the absence of special circumstances, a parent corporation is not liable for the Title VII violations of its wholly owned subsidiary. *See Watson v. Gulf & W. Indus.*, 650 F.2d 990, 993 (9th Cir.1981). The "doctrine of limited liability creates a strong presumption that a parent company is not the employer of its subsidiary's employees, and the courts have found otherwise only in extraordinary circumstances." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir.1993). Such extraordinary circumstances exist only where the parent corporation exercises a degree of control over its subsidiary that exceeds the control normally exercised by a parent over a subsidiary. *Armbruster v. Quinn,* 711 F.2d 1332 (6th Cir.1983). Anwar has not even attempted to show such extraordinary circumstances with respect to the relationship between Dow and Dow Deutschland.

In support of her argument that Ramachandran should be treated as an employee of Dow, Anwar emphasizes *Dow Chemical Company v. Daniel*, Case No. 13-14745 (E.D. Mich. March 28, 2014).  The Defendant in that case, Pablo Daniel Segismun Edelstein ("Edelstein"), had previously been employed with Dow at its corporate headquarters in Midland, Michigan. *Id*. at *1. In 2006 Edelstein was placed on a temporary assignment as a Global Finance Director for a related entity, Dow Latin America in Sao Paolo, Brazil. *Id.* While Edelstein was assigned to Dow Latin America, he continued to serve as part of Dow's "Global Leader Family" and remained an

employee DCOMCO, receiving a salary, benefits, and W-2 tax forms from DCOMCO and maintaining a dual functional reporting obligation to Dow's headquarters in Midland, Michigan. *Id*. at \*2-\*3. After the termination of his employment, Edelstein filed suit against Dow Brazil in Brazilian labor court seeking damages in excess of $10 million. *Id.* \*4. In response, Dow – not DCOMCO – filed suit against Edelstein in the Eastern District of Michigan, stating claims of breach of contract, fraudulent misrepresentation and unjust enrichment arising out of Edelstein's Brazilian lawsuit. *Id.* at \*1. Plaintiff Anwar argues that by instituting suit against Edelstein, Dow demonstrated that DCOMCO is a mere payroll company for Dow, and that DCOMCO is an alter ego of Dow. In essence, Anwar argues that by instituting suit against a DCOMCO employee in *Daniel*, Dow has waived the argument that the two entities should not be treated as a single entity.

In addition to waiver, Anwar argues that Dow's control of Ramachandran's employment is evidenced by the fact Dow terminated his predecessor, Henry Roth, after an investigation by Dow's fraud department, showing that Dow has the power to make termination decisions regarding DCOMCO employees. Plaintiff Anwar further emphasizes that despite receiving his salary and W-2's from DCOMCO, Ramachandran reports to Dow and receives performance reviews from Dow.

Defendant Dow responds that *Daniel* is distinguishable from the present case. Dow notes that *Daniel* raised the question of whether the Edelstein had been properly served and whether the Eastern District of Michigan could exercise personal jurisdiction over him, and did not raise any questions regarding the interrelatedness of DCOMCO and Dow. Defendant Dow also argues that while Edelstein, an expatriate DCOMCO employee, had reporting obligations to Dow, it does not necessarily follow that Ramachandran, also an expatriate DCOMCO employee, had

such reporting obligations. Unlike Edelstein, Dow contends, Ramachandran does not have split duties between Dow and his MEGlobal assignment. Instead, as the President and CEO of MEG International, Ramachandran's duties are only to that entity. Dow concludes that because Ramachandran works only on behalf of MEG International, Anwar's theory that her employment was controlled by Dow fails as a matter of law. *See* Leikhim Dec. II, MEG Supp. Br. Ex. C

Even assuming that Ramachandran was dually employed with Dow through his employment with DCOMCO, Plaintiff Anwar has not established that her employment was controlled by Defendant Dow. As noted above, it is a "well established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *Bestfoods*, 524 U.S. at 69 (citation and internal quotation marks omitted). Courts generally presume that such dual status individuals wear their "parent hats" when serving the parent's interests, and their "subsidiary hats" when serving the subsidiary's interests. *Id*. To rebut this presumption, a plaintiff must allege facts demonstrating that the dual status individuals were acting in the parent's interest, and not the subsidiary's, when they engaged in the challenged conduct. *See id*. at 70. *See also Fried v. LVI Servs., Inc.,* 2011 WL 2119748, at *5 (S.D.N.Y. May 23, 2011) (holding that a plaintiff alleging wrongful termination by a subsidiary board had not established that related parent entities controlled his employment through dually-employed directors, as the plaintiff had not rebutted "the presumption that directors with affiliations to more than one corporation 'change hats' in order to fulfill their obligations to each entity.")

Plaintiff Anwar has not pled any facts or presented any evidence to rebut the presumption that Ramachandran was acting in his capacity as the CEO and President of MEG International at the time of the employment action. Nor has Plaintiff Anwar pled any facts or presented any

evidence that Ramachandran acted at the behest of Dow, or that Dow had any knowledge of the challenged conduct. Plaintiff Anwar therefore has not stated a claim against Defendant Dow under Title VII.

**ii.**

For the same reason, Plaintiff has failed to state a claim against Defendant Dow under ELCRA. Like Title VII, ELCRA applies only to employers. M.C.L.A. § 37.2202 ("An *employer* shall not… discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term condition or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status." (emphasis added)). *See also Seabrook v. Mich. Nat'l Corp., 206* Mich. App. 314, 315–16 (Mich. Ct. App.1994) (affirming state trial court's grant of summary judgment to the defendant on an ELCRA claim because the plaintiff failed to show that an employment relationship existed between her and the defendant). Michigan courts use the "economic realities test" to determine whether an employment relationship exists for purposes of ELCRA. *Varlesi v. Wayne State University*, 909 F.Supp. 2d 827, 843-44 (E.D. Mich. 2012). Therefore, in determining whether an employment relationship exists courts must consider the totality of circumstances surrounding the plaintiff's work, including the following non-controlling factors: (1) control of a worker's duties; (2) payment of wages; (3) right to hire, fire, and discipline; and (4) performance of the duties as an integral part of the employer's business toward the accomplishment of a common goal. *Chilingirian v. City of Fraser*, 486 N.W.2d 347, 349 (Mich. Ct. App. 1992).

Even assuming that Ramachandran was also employed by Dow, Anwar has not rebutted the presumption that he was serving in his capacity as MEG International's president and CEO at the time of the alleged acts. *See Bestfoods*, 524 U.S. at 69; *In re Estate of Upjohn*, No. 278668,

- 14 -

2010 WL 624413, at *6 (Mich. Ct. App. Feb. 23, 2010) (citing *Bestfoods* with approval). She therefore has not shown that Dow controlled her employment through Ramachandran. Anwar's ELCRA claims, Count II and III of her complaint, will be dismissed.

### iii.

Counts IV, V and VI of Plaintiff's complaint allege breach of an express written agreement, breach of an implied contract, and promissory estoppel against Dow based on Dow's code of business conduct. In support of those claims, Anwar alleges that Dow agreed not to terminate her employment in violation of its code of business conduct, and that she had a legitimate expectation of job security. Anwar was not an employee of Dow at the time of the events in question, and therefore Anwar was not party to any employment agreement with Dow at that time. Moreover, because Anwar was not an employee of Dow, Dow did not terminate Anwar's employment or otherwise harass or discriminate against her. Anwar's remaining claims will therefore be dismissed.

### III.

Accordingly, it is **ORDERED** that Defendant MEG International's motion to dismiss, ECF No. 16, is **GRANTED**.

It is further **ORDERED** that Defendant MEG International is **DISMISSED** from this action for lack of personal jurisdiction.

It is further **ORDERED** that Defendant Dow's converted motion for summary judgment, ECF No. 19, is **GRANTED**.

It is further **ORDERED** that Plaintiff Anwar's claims against Defendant Dow are

**DISMISSED with prejudice.**

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: September 20, 2016

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on September 20, 2016.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager